**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

SHIRLEY COSBY                                                         PLAINTIFF

V.                                              CIVIL ACTION NO. 5:11cv159-KS-MTP

VICKSBURG HEALTHCARE, LLC D/B/A
RIVER REGION MEDICAL CENTER AND
DARLENE WHITE, INDIVIDUALLY AND
IN HER OFFICIAL CAPACITY                                   DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the Motion for Summary Judgment [44] of the

Defendants Vicksburg Healthcare, LLC d/b/a River Region Medical Center ("RRMC")

and Darlene White.  Having considered the parties' submissions, the record, and the

applicable law, the Court finds that the motion should be granted.

<u>**I.  BACKGROUND**</u>

On August 26, 2010, Plaintiff Shirley Cosby, an African-American female, was

terminated from her employment with RRMC for purportedly violating the Health

Insurance Portability and Accountability Act of 1996 ("HIPAA") by accessing a co-

worker's medical records.  RRMC operates several medical facilities in Vicksburg,

Mississippi, including a hospital and a separate medical clinic that is commonly referred

to as the "Street Clinic".  Plaintiff was fifty-one (51) years old and was working in the

Street Clinic as a Lab Assistant/Phlebotomist at the time of her discharge.  Further,

Plaintiff had been employed by RRMC for approximately twenty-five (25) years when

she was terminated.  At all times relevant to the Complaint, Defendant Darlene White

was employed by RRMC as the Administrative Laboratory Director and was responsible

for managing both the hospital and Street Clinic laboratories.

On November 1, 2011, Plaintiff brought this lawsuit against RRMC and Darlene White asserting numerous federal and state law claims in connection with the termination of her employment.  (*See* Compl. [1].)  Plaintiff alleges employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA").  Plaintiff also asserts the following state law causes of action: tortious breach of contract, intentional infliction of emotional distress, and negligence.  RRMC and Defendant White have moved for summary judgment on all of Plaintiff's claims.  (*See* Motion for SJ [44].)  The motion has been fully briefed and the Court is ready to rule.

## II.  DISCUSSION

### A.    Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted).  The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."  *Id.*  "'An issue is material if its resolution could affect the outcome of the action.'"  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels*

*v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."  *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary judgment is mandatory "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)), *cert. denied*, 132 S. Ct. 2103 (2012).

## B.    Analysis

### 1.    Federal Claims

The following circumstances are pertinent to Plaintiff's federal claims for relief.  In July of 2010, one of RRMC's employees at the Street Clinic was diagnosed with a

serious illness and became a patient at RRMC (the "Employee-Patient").[1]  On July 22, 2010, Defendant Darlene White was advised by Lisa Hasty, a RRMC employee, that another RRMC employee, Liz Conner, had used her log-in and password information to view certain test results of the Employee-Patient on the hospital's Co-Path computer system.[2]  Defendant White subsequently advised Joy Hite, RRMC's Privacy and Compliance Officer, of the matter and Ms. Hite conducted an investigation as to whether the Employee-Patient's medical information had been improperly accessed by other RRMC employees.

Ms. Hite initially attempted to obtain an audit of the Co-Path system with respect to the Employee-Patient's records, but was unable to get one.  Ms. Hite subsequently obtained audits of the HBO system, which Ms. Hite used to determine that the following RRMC employees had accessed the Employee-Patient's medical information without any legitimate reason for doing so:  Plaintiff Shirley Cosby, Maggie Fife, Shirley Brewer, Mary Elizabeth Conner,[3] Sylvia McBeath and Jennifer Smith.  Ms. Hite interviewed each of these employees.  Brewer, Conner, McBeath and Smith all admitted to accessing the Employee-Patient's medical information without authorization.  Each of these

---

[1] The identity of the Employee-Patient will not be disclosed in this opinion and order due to privacy concerns and because the Employee-Patient's identity is irrelevant to the issues before the Court.

[2] RRMC laboratory employees utilize two different electronic record management programs, Co-Path and HBO.  Co-Path is used to record pathology results, while HBO is used to record all other laboratory results, such as blood and urinalysis.

[3] "Liz Conner" and "Mary Elizabeth Conner" refer to the same individual.  The HBO audit did not show that Ms. Conner had accessed the Employee-Patient's medical information apparently because she viewed the information through the Co-Path system.

employees received a written warning and Ms. Smith was also suspended for three (3) days without pay.  Plaintiff and Maggie Fife denied accessing the Employee-Patient's medical information.  Plaintiff told Ms. Hite that she had no reason to access the Employee-Patient's information and that the Employee-Patient had previously called her and asked that she inform their supervisor, Cynthia Douglas,[4] that she would have to miss work because of a medical issue.

On August 26, 2010, Plaintiff and Maggie Fife were terminated for violating HIPAA.  Plaintiff was advised of her termination in a meeting with Joy Hite, Darlene White and Anita Oliphant (RRMC's Interim Human Resources Director).  At the beginning of the meeting, Joy Hite folded a piece of paper in front of her and stated, "This is where we have you logging in to patient/coworker information."  (Cosby Dep. [51-3] 47:17-23.)  Plaintiff again denied accessing the Employee-Patient's protected information.  Darlene White then allegedly took control of the meeting and told the Plaintiff that she "was going to be terminated for . . . a HIPAA violation."  (Cosby Dep. [51-3] 144:2-9.)  Plaintiff contends that Defendant White called her "Illiterate" and was loud and intimidating during the meeting.  (Cosby Dep. [51-3] 156:1-14.)  Plaintiff refused to sign a disciplinary notice indicating that she had violated HIPAA and walked out of the meeting after stating, "Well, other people came to me and told me things. . . .

---

[4] It is not clear if Cynthia Douglas or Darlene White was the Plaintiff's supervisor at the Street Clinic at the time of her termination.  The Complaint asserts that Defendant White was Plaintiff's supervisor.  (*See* Compl. [1] at ¶ 8.)  Yet, Plaintiff's opposition to summary judgment and deposition testimony indicate that Defendant White never supervised the Plaintiff and that Cynthia Douglas, the Clinic Assistant Administrator, was her supervisor.  (Pl.'s Resp. to Motion for SJ [51] at ¶ 9; Cosby Dep. [51-3] 22:10-23:1.)  RRMC does not appear to take a position on this issue.  This matter is not outcome determinative of any of Plaintiff's claims on summary judgment.

If it's not something done to them, I will seek an attorney."  (Cosby Dep. [51-3] 47:17-48:6.)

Also during the summer of 2010 (specifically, on August 20), Defendant White met with the Plaintiff and Maggie Fife (a Medical Technologist) in regard to a reduction in force at the Street Clinic.  Defendant White advised the Plaintiff and Ms. Fife that laboratory testing would be performed at the hospital, as opposed to the Street Clinic, and thus, Ms. Fife's services were no longer needed.  Plaintiff's Phlebotomist position was not being eliminated because blood samples would still be taken at the Street Clinic.  Defendant White further stated that another employee at the Street Clinic who was out on sick leave, the Employee-Patient, would be laid off and that the Employee-Patient would be advised of this decision through the mail.  Plaintiff purportedly questioned whether the Employee-Patient could be terminated while he or she was out sick, and walked out of the meeting after Ms. White stated, "Yeah, we can do that." (Cosby Dep. [51-3] 39:25-40:12.)  Subsequent to Plaintiff's termination for violating HIPAA, her Phlebotomist position at the Street Clinic was filled by Tina Broom, an African-American female approximately the same age as the Plaintiff.  (Cosby Dep. [44-1] 90:16-91:8.)

Plaintiff alleges retaliation under the FMLA and disparate treatment and retaliation under both Title VII and the ADEA in connection with the preceding circumstances.  As an initial matter, the Court finds that Plaintiff's Title VII and ADEA claims against Defendant Darlene White fail as a matter of law.  Neither statute permits the maintenance of a claim against a managerial or supervisory employee.  *See Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("Individuals are not liable

-6-

under Title VII in either their individual or official capacities.") (citation omitted); *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996) (holding that there is no basis for individual liability against supervisory employees under the ADEA).  Furthermore, Plaintiff's official capacity claims against Defendant White are redundant since her employer, RRMC, is a party to this lawsuit.  *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation omitted).

Plaintiff's reliance on *Oden v. Okitbbeha County, Mississippi*, 246 F.3d 458 (5th Cir. 2001) and *Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006), in support of Defendant White being held liable is misplaced.  In *Oden*, the Fifth Circuit held that a sheriff could be considered an employer under Title VII, and thus subject to official capacity liability, since he "was solely responsible for hiring, promoting, and establishing the deputies' wages." 246 F.3d at 465.  There is no claim or proof in this case that Defendant White was solely responsible for hiring, promoting, and establishing Plaintiff's wages.  In *Modica*, the Fifth Circuit found that the executive director of a state agency could be held liable as an employer under the FMLA given the straight-forward definition of "employer" under that statute.  465 F.3d at 186-87.  The "employer" definitions under Title VII and the ADEA are not similarly interpreted.  *See Ackel*, 339 F.3d at 381 n.1; *Stults*, 76 F.3d at 655.  Accordingly, summary judgment will be granted in favor of Defendant White on Plaintiff's Title VII and ADEA claims.

### a.    Disparate Treatment (Title VII and ADEA)

Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1).  Similarly, the ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1).  A disparate treatment claim requires proof of intentional discrimination.  *See, e.g.*, *Aliotta v. Bair*, 614 F.3d 556, 561 (D.C. Cir. 2010) (ADEA); *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000) (Title VII).  "Direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs must ordinarily prove their claims through circumstantial evidence."  *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir. 1996)); *accord Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (noting that a plaintiff proceeding under the ADEA may rely on direct or circumstantial evidence).  Circumstantial evidence cases, such as this one, are analyzed through the burden shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  *See Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007).  The Fifth Circuit employs the following modified *McDonnell Douglas* approach in suits alleging racial discrimination:

> [T]he plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's

protected characteristic.

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411-12 (5th Cir. 2007) (citation omitted).

The Supreme Court has rejected the application of Title VII's "motivating factor" element to ADEA claims. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). To establish a disparate treatment claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.* That is, age must be "*the* 'reason' that the employer decided to act." *Id.* (emphasis added). Plaintiff's ADEA claim will necessarily fail if the summary judgment evidence merely shows that age was a motivating factor for her termination from RRMC. *See Moss*, 610 F.3d at 928.

*i) Prima Facie Case*

The Plaintiff is required to show the following in order to make out a prima facie case of discrimination based on race or age: (1) that she is within the protected class; (2) that she is qualified for the position; (3) that she suffered an adverse employment decision; and (4) that she was replaced by someone outside the protected class (or, under the ADEA, someone younger), or treated less favorably than a similarly situated employee. *See, e.g.*, *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003) (providing elements for ADEA case); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (same as to Title VII). "Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case is not onerous." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (citation and internal quotation marks omitted). Only the fourth element

is at issue between the parties.

"In work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule *or* that, if he did, white employees who engaged in similar acts were not punished similarly'". *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, (5th Cir. 1995) (emphasis added) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)). Plaintiff's sworn deposition testimony creates a fact issue as to whether or not she violated HIPAA. Plaintiff consistently testified that she did not access the Employee-Patient's protected health information. (*See* Cosby Dep. [44-1] 66:1, 66:22-67:5; [51-3] 76:17-18.) Plaintiff also indicated that it was commonplace for RRMC employees not to log out of the computer system throughout the work day, and thus, another employee could have accessed the Employee-Patient's medical information using her log-in and password information. (*See* Cosby Dep. [44-1] 66:19-67:25; [51-3] 155:1-9.) Maggie Fife similarly testified "that the HBO system had been down [around the time of the asserted HIPAA violations] and that people were using each other's computers because the system was down." (Fife Dep. [51-1] 104:1-5.) The Court is unable to hold as a matter of law that Plaintiff violated HIPAA in light of this evidence. Thus, Plaintiff has established her prima facie case of discrimination based on race under Title VII.

The parties have not cited, and the Court has been unable to identify any Fifth Circuit opinion providing that the fourth element of a prima facie case of age discrimination may be met solely upon a plaintiff's showing that he did not violate a work rule. Therefore, Plaintiff Cosby's ADEA prima facie case turns on whether she can demonstrate that she was treated less favorably than any younger, similarly situated

employee charged with violating HIPAA.  Plaintiff proffers Lisa Hasty and Jennifer Smith as proper comparators.

RRMC argues that the Plaintiff, Ms. Hasty and Ms. Smith are not similarly situated.  RRMC asserts that Ms. Hasty was not included in the HIPAA investigation because her name did not appear on the HBO audit that Ms. Hite used during the investigation.  As for Ms. Smith, RRMC posits that she admitted viewing the Employee-Patient's medical information without authorization, while the Plaintiff denied accessing the information and it did not believe Plaintiff's denial.  RRMC also points out that two other employees disciplined but not terminated for violating HIPAA, Shirley Brewer and Mary Elizabeth Conner, are older than the Plaintiff; that a third employee, Sylvia McBeath, is only two (2) years younger than the Plaintiff; and that the individual replacing the Plaintiff at the Street Clinic, Tina Broom, is of the same age as the Plaintiff.  According to RRMC, these facts establish that the Plaintiff was not terminated because of her age.

A claimant who proffers a fellow employee as a comparator must demonstrate that the subject employment actions "were taken under nearly identical circumstances." *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 895 (5th Cir. 2012) (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)).  "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."  *Id.*  "[T]he similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline

-11-

was meted out and not necessarily on how a company codes an infraction under its rules and regulations." *Lee*, 574 F.3d at 261.

The Court finds that the Plaintiff and Lisa Hasty are not similarly situated for purposes of the Plaintiff's prima facie case. RRMC had no documentary evidence showing that Ms. Hasty accessed the Employee-Patient's medical information. Conversely, the HBO audit obtained by Ms. Hite led RRMC to determine that the Plaintiff accessed the Employee-Patient's protected information on more than one occasion. The summary judgment record also shows that the HIPAA investigation leading to Plaintiff's termination began when Ms. Hasty advised Defendant White that Liz Conner had used her log-in and password information to access the Employee-Patient's test results. The conduct of Ms. Hasty, who voluntarily went to a supervisor and disclosed a potential HIPAA violation, cannot be considered nearly identical to that of the alleged misconduct of the Plaintiff.

The conduct of Jennifer Smith and the Plaintiff, however, is more comparable. Both Plaintiff and Ms. Smith's Employee Disciplinary Action Notices list the same violations, *viz.*, failure to comply with hospital policy; unprofessional conduct; violation of confidentiality; and violation of HIPAA policy. (*See* Doc. No. [51-12] at pp. 2, 6.) Further, the same decision maker, Vance Reynolds (RRMC's CEO), ultimately determined that the Plaintiff's violations justified termination and that Ms. Smith should receive a written warning and a three-day suspension of employment for her violations.[5] Although there is a difference in the number of times Ms. Smith and the Plaintiff are

---

[5] Joy Hite recommended both Plaintiff and Ms. Smith's employment outcomes to Mr. Reynolds.

charged with improperly accessing the Employee-Patient's medical information, two (2) as to the Plaintiff and thirteen (13) as to Ms. Smith, that difference only supports the inference that the termination of the Plaintiff versus the suspension of Ms. Smith was discriminatory.

RRMC's justification for treating Ms. Smith and the Plaintiff differently, that Ms. Smith admitted to accessing the protected information and the Plaintiff lied about her misconduct, is not availing at this stage of the *McDonnell Douglas* analysis.  Ms. Smith is a proper comparator since she and the Plaintiff are charged with the same underlying misconduct, violating HIPAA, and the same decision maker determined their varying employment outcomes.  RRMC's justification for these different outcomes and the ages of Tina Broom, Shirley Brewer and Mary Elizabeth Conner are more appropriately considered in the *legitimate reason* and *pretext* analyses.  *Cf. Lee*, 574 F.3d at 262 (finding that the plaintiff established his prima facie case and that certain distinctions between the plaintiff and a comparator's situations "might very well prove to be relevant in the event that KCS proffers a legitimate nondiscriminatory explanation for the disparate results").

RRMC's reliance on the Fifth Circuit's decision in *Wheeler v. BL Development Corp.*, 415 F.3d 399 (5th Cir. 2005) does not change this result.  In *Wheeler*, the Fifth Circuit affirmed the district court's ruling that Caucasian plaintiffs and an African-American comparator were not similarly situated.  *See id.* at 406.  The plaintiffs and the comparator were each accused of moving company assets during the same time frame. *See id.*  However, the plaintiffs were found to be less than truthful during the course of the company's investigation, while the comparator readily admitted her conduct.  *See id.*

Also, the value of the company property removed by the plaintiffs, a tire changing machine, was much greater than the value of the hair care products taken by the comparator.  *See id.*  In the context of summary judgment, this Court is unable to make the credibility determination of whether or not the Plaintiff told the truth during the course of RRMC's investigation.  *See Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1327 n.4 (5th Cir. 1996) ("Credibility determinations, of course, are within the province of the fact-finder.") (citation omitted).  Moreover, unlike the plaintiff/comparator situation at issue in *Wheeler*, the conduct of Ms. Smith could be considered more serious than that of the Plaintiff given the disparity in the number of times each individual was charged with accessing the Employee-Patient's medical information.  Viewing the evidence in the Plaintiff's favor, the Court concludes that the Plaintiff has met her "not [so] onerous" burden of establishing a prima facie case of employment discrimination based on age.  *Reed*, 701 F.3d at 439.

### ii)  Legitimate Nondiscriminatory Reason

The defendant's reason for the adverse employment action need not be persuasive or credible.  *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002).  Instead, the defendant's burden is to produce "evidence, which, '*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'"  *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Hicks*, 509 U.S. at 509).  RRMC's Privacy and Compliance Officer, Joy Hite, testified at deposition that the Plaintiff and Maggie Fife were terminated because they violated HIPAA and because they refused to admit to the violations

-14-

notwithstanding documentation (the HBO audit) showing otherwise.  This evidence

sufficiently negates the inference of discrimination raised by Plaintiff's prima facie case.

*See Horton v. Entergy Servs., Inc.*, No. 3:09cv66, 2012 WL 1098470, at *7 (S.D. Miss.

Mar. 31, 2012) (finding the defendant-employer's burden of production met where the

plaintiff-employee was accused of violating company policy and the defendant believed

the plaintiff was dishonest during its internal investigation); *Teklehaimanot v. Park Ctr.,*

*Inc.*, 804 F. Supp. 2d 886, 909 (N.D. Ind. 2011) ("Park Center's explanation that it

terminated Teklehaimanot because she breached its confidentiality and HIPAA policies

is a credible, legitimate, non-discriminatory reason for her termination.").

### iii) Pretext - Motivating Factor

The Plaintiff is now afforded a full and fair opportunity to show that the

defendant's proffered explanation is not true, i.e., that it is a pretext for discrimination.

*Price*, 283 F.3d at 720.  Pretext may be exposed "either through evidence of disparate

treatment or by showing that the employer's proffered explanation is false or 'unworthy

of credence.'"  *Moss*, 610 F.3d at 922.  A claimant's prima facie case, combined with

sufficient proof that the employer's proffered justification is false, may permit the trier of

fact to determine that the employment decision was motivated by discrimination.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L.

Ed. 2d 105 (2000).  However, there will also be cases where no reasonable jury could

conclude that the employment action was discriminatory in nature, notwithstanding the

plaintiff's showing of a prima facie case and sufficient evidence to negate the

defendant's justification.  *Id.*  "The ultimate question is whether the employer

intentionally discriminated, and proof that 'the employer's proffered reason is

unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'" *Id.* at 146-47.

Plaintiff may also avoid summary judgment on her Title VII disparate treatment claim by presenting sufficient evidence for a reasonable jury to conclude that race was a motivating factor for her termination. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) (citation omitted). The Plaintiff may rely on direct or circumstantial evidence for this mixed-motive showing. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101-02, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003). As noted above, the motivating factor analysis is inapplicable to Plaintiff's charge of discrimination under the ADEA. *See Gross*, 557 U.S. at 176.

Plaintiff essentially makes two pretext arguments:  (1) that she was singled out and treated differently than other staff members accused of the same or nearly identical conduct; and (2) that the HIPAA investigation leading to her termination was a sham and a witch hunt designed to terminate two long-term employees of RRMC, the Plaintiff and Maggie Fife. As previously noted, RRMC asserts that it treated the Plaintiff and Maggie Fife differently than Jennifer Smith, Sylvia McBeath, Mary Elizabeth Conner and Shirley Brewer (the "Remaining Employees") because the former denied accessing the Employee-Patient's medical information and RRMC did not believe their denials, while the latter admitted to accessing the information without authorization.

As to Plaintiff's first pretext argument, she has failed to evidence that RRMC's asserted explanation is unworthy of credence. For instance, no showing is made that any of the Remaining Employees ultimately refused to admit viewing the Employee-Patient's medical information. Instead, Plaintiff focuses on the allegation that she and

Maggie Fife were given only one opportunity to admit or deny accessing the Employee-Patient's information, yet the Remaining Employees were each given two chances to come clean about the matter.  First, this allegation is not supported by the summary judgment record.  It appears that two of the Remaining Employees, Shirley Brewer and Sylvia McBeath, admitted their misconduct during their first interviews with Joy Hite.  Second, Plaintiff actually denied accessing the Employee-Patient's medical information on *two* separate occasions:  (1) in her meeting with Ms. Hite in the early part of August when she told Ms. Hite "that I had no reason to go in to . . . [the Employee-Patient's] information";[6] and (2) at the beginning of her meeting with Ms. Hite, Defendant White and Anita Oliphant on August 26, upon Ms. Hite's indication that she had paperwork showing Plaintiff "logging in to patient/coworker information."  (Cosby Dep. [51-3] 47:17-23.)  As a result, Plaintiff's reliance on the fact that some of the Remaining Employees were given two chances to admit or deny their misconduct is unavailing.

It is also pertinent at this stage of the *McDonnell Douglas* analysis, where "the ultimate question [is] discrimination *vel non*",[7] to consider the following facts:  two of the Remaining Employees are older than the Plaintiff;[8] RRMC terminated a Caucasian employee, Maggie Fife, charged with the same misconduct as the Plaintiff; and Plaintiff's replacement at the Street Clinic was an African-American female approximately the same age as the Plaintiff.  RRMC's retention of individuals older than

---

[6] (Cosby Dep. [51-3] 73:1-25.)

[7] *Mayberry*, 55 F.3d at 1090.

[8] Shirley Brewer was 63 and Mary Elizabeth Conner was 56 as of the date of Plaintiff's termination.

the Plaintiff, termination of an individual outside of Plaintiff's Title VII protected class, and replacement of the Plaintiff with an individual within Plaintiff's Title VII and ADEA protected classes tend to negate any inference that Plaintiff's termination was based on race or age.  Taking all the preceding circumstances into consideration, the Court finds Plaintiff's first pretext argument focusing on disparate treatment to be insufficient to preclude summary judgment.

Plaintiff asserts numerous complaints relating to the HIPAA investigation leading to her termination.  First and foremost, Plaintiff denies accessing the Employee-Patient's protected health information.  Plaintiff's denial of wrongdoing, in and of itself, fails to create a fact issue in the pretext analysis.  "In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith.'" *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (quoting *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (1993)).  In *Jackson*, the Fifth Circuit found the claimant's assertion of innocence to be irrelevant in the absence of any evidence suggesting that his employer's reliance on the results of an investigation leading to his termination was in bad faith or unreasonable.  *Id.*; *see also Reed*, 701 F.3d at 440 n.4 ("Reed's denial of wrongdoing, standing alone, is insufficient to create a fact issue.").

Plaintiff further argues that she and Maggie Fife only had access to patient "lab results" through the HBO system, whereas the Remaining Employees had the ability to access "diagnosis and test results".  (Pl.'s Mem. of Auths. in Supp. of Resp. to Motion for SJ ("Mem. of Auths.") [52] at pp. 5, 9-10.)  This is a distinction without a difference.

-18-

The definition of protected health information under HIPAA is broad enough to encompass a patient's lab results. *See* 45 C.F.R. 160.103.  Furthermore, Plaintiff testified at deposition that the HBO audit utilized by Joy Hite showed her "user name and password accessing . . . [the Employee-Patient's] records . . . ."  (Cosby Dep. [44-1] 66:7-10.)  Plaintiff's focus on the extent of the protected health information she had the ability to access in no way evidences that RRMC's proffered explanation for her termination was not "the real reason", i.e., that the explanation was merely a pretext for race or age-based discrimination.  *Sandstad*, 309 F.3d at 899.

Plaintiff's opposition to summary judgment also makes much ado about a discrepancy between Joy Hite's deposition testimony and the testimony of Ms. Hite and Defendant White at a hearing before the Mississippi Department of Employment Security ("MDES").  Ms. Hite's deposition testimony indicates that the HIPAA investigation resulted from Lisa Hasty reporting that Liz Conner used her log-in and password information to view the Employee-Patient's medical information.  The MDES testimonies of Ms. Hite and Defendant White appear to indicate that the impetus for the HIPAA investigation was Defendant White telling Ms. Hite that there was a concern regarding the confidentiality of the Employee-Patient's medical information and that Maggie Fife had told Defendant White what was wrong with the Employee-Patient.  The Court fails to discern how the issue of whether the HIPAA investigation initially focused on Liz Conner or Maggie Fife evidences pretext as to RRMC's basis for terminating Plaintiff Shirley Cosby.

Plaintiff raises a host of other allegations relating to the HIPAA investigation, including, but not limited to, the fact that some of the Remaining Employees worked at

-19-

RRMC's hospital while the Plaintiff, Maggie Fife and Jennifer Smith worked at the Street Clinic; RRMC has not produced all of its records pertaining to the HIPAA investigation; Denise Cooper did not immediately report a telephone call that she received from the Employee-Patient regarding the confidentiality of her information; Denise Cooper was never interviewed by Joy Hite during the HIPAA investigation; and, Jennifer Smith received a promotion after her suspension of employment.  Upon review of Plaintiff's remaining complaints, as well as RRMC's counter-arguments,[9] the Court finds that the Plaintiff has failed to evidence any genuine issue of *material* fact precluding summary judgment.

At best for the Plaintiff, she has raised a fact question as to whether RRMC's decision to terminate her was in error.  More is required in order to proceed on a claim of employment discrimination.  "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry*, 55 F.3d at 1091; *see also Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason.").  A contrary ruling would amount to judicial nitpicking or second-guessing of an employer's business decision, which is proscribed by the Fifth Circuit.  *See EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) ("The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the courts into

---

[9] For example, RRMC posits that the court record contradicts Plaintiff's discovery-based complaint, and correctly notes that the Plaintiff should have filed a motion to compel if she believed that RRMC improperly withheld information.  The time for any discovery motion in this case has long since passed.  *See* L.U.Civ.R. 7(b)(2)(B).

personnel managers.") (citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08

(5th Cir. 1988)); *accord Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir.

2005) (citing *Bienkowski* in a Title VII action).

The Court also takes into account the reasons Plaintiff believes RRMC

terminated her, other than her age, in considering her ADEA charge.  Plaintiff provided

the following testimony at deposition regarding the bases for her termination:

> Q.     Why do you think it was based on your age?
>
> A.     It's not only my age.  It's race.  It wasn't only my age.  It was a profit
>        for the hospital.[10]  So you have different categories in there, just --
>        that's one of them is age, race and benefit of the hospital.

(Cosby Dep. [44-1] 94:18-22.)  Even if the Plaintiff had presented evidence that her age

and these other factors motivated RRMC's adverse decision, her ADEA claim could not

proceed forward.  *See Moss*, 610 F.3d at 928.

Plaintiff appears to believe in good faith that her termination was motivated, in

part, by her age and race.  However, the Court finds no evidence to support those

beliefs "and the Fifth Circuit 'has consistently held that an employee's subjective belief

of discrimination alone is not sufficient to warrant judicial relief.'"  *Ellini v. Ameriprise*

*Fin., Inc.*, 881 F. Supp. 2d 813, 824 (S.D. Tex. 2012) (quoting *Auguster v. Vermilion*

*Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001) (quoting *Bauer v. Albemarle Corp.*,

169 F.3d 962, 967 (5th Cir. 1999)));  *see also Roberson v. Alltel Info. Servs.*, 373 F.3d

647, 654 (5th Cir. 2004) (finding plaintiff's subjective belief that race or age motivated

---

[10] "[T]he ADEA prohibits discrimination on the basis of age, not salary or seniority."
*Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir. 1995) (citing *Hazen*
*Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 1706-08, 123 L. Ed. 2d 338
(1993); *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 813 (5th Cir. 1991)).

the defendant's employment decision insufficient to raise an inference of discriminatory intent).

In sum, the Court finds that no reasonable jury could conclude that Plaintiff's "age was the '*but-for*' cause of" RRMC's decision to terminate her employment,[11] or that Plaintiff's race was a "motivating factor" for RRMC's employment decision. *Bryant*, 413 F.3d at 476. Thus, RRMC will be granted summary judgment on Plaintiff's allegations of disparate treatment under the ADEA and Title VII.

### b.    Retaliation (ADEA and Title VII)

The Complaint asserts that the Plaintiff was unlawfully retaliated against in violation of Title VII and the ADEA. (*See* Compl. [1] at ¶¶ 58, 60.) The ADEA and Title VII prohibit employers from retaliating against employees for engaging in statutorily protected activities. *See* 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a). A claimant "establishes a prima facie case of retaliation by showing: (1) that she engaged in activity protected by Title VII or the ADEA; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision." *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992) (citations omitted).

Under the first required element, an employee has engaged in protected activity if he has (1) *opposed* any practice made unlawful by Title VII or the ADEA (the "opposition clause"); or (2) made a charge, testified, assisted or *participated* in any way in an investigation, proceeding or hearing made available by either statute (the

---

[11] *Moss*, 610 F.3d at 928 (emphasis added).

"participation clause").  *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-28

(5th Cir. 2000).  The participation clause is irrelevant in this action because the Plaintiff

did not file her EEOC charge until after she was terminated.  *See id.* at 428.  The

opposition clause requires that Plaintiff show she had a reasonable "belief that the

employer was engaged in unlawful employment practices."  *Id.*  The Fifth Circuit has

consistently held that the making of vague complaints to an employer without reference

to an unlawful employment practice does not constitute protected activity.[12]

RRMC relies on the following deposition testimony of the Plaintiff in support of its

position that the Plaintiff never opposed an unlawful employment practice under the

ADEA or Title VII prior to her termination:

Q.      Did you complain to anyone at River Region that you thought you were
        being discriminated against because of your race?

A.      Not before my termination.

Q.      Did you tell -- mention race to anyone at River Region before your
        termination?

A.      Not before my termination.

          . . . .

Q.      Did you complain to anyone at River Region about age discrimination
        before you were terminated?

---

[12] *See, e.g., Davis v. Dallas Indep. Sch. Dist.*, 448 Fed. Appx. 485, 493 (5th Cir.
2011); *Tratree v. BP N. Am. Pipelines, Inc.*, 277 Fed. Appx. 390, 395 (5th Cir. 2008);
*Harris–Childs v. Medco Health Solutions, Inc.*, 169 Fed. Appx. 913, 916 (5th Cir. 2006);
*Moore v. United Parcel Serv., Inc.*, 150 Fed. Appx. 315, 319 (5th Cir. 2005); *accord
Wright v. Custom Ecology, Inc.*, No. 3:11CV760, 2013 WL 1703738, at *7 (S.D. Miss.
Apr. 19, 2013) ("Complaints to employers that do not complain of conduct protected by
Title VII do not constitute protected activities under the statute.") (citation omitted).

A.    No.

Q.    Did you complain to anyone at River Region about any type of discrimination before you were terminated?

A.    No.

(Cosby Dep. [44-1] 91:9-15, 98:3-9.)  It is well-settled that sworn testimony prevails over pleadings and arguments of counsel on summary judgment.  *See, e.g.*, *Nettles v. Travelers Prop. Cas. Ins. Co.*, 375 F. Supp. 2d 489, 492 (S.D. Miss. 2005); *Roberts v. Walthall County Gen. Hosp.*, 96 F. Supp. 2d 559, 561 (S.D. Miss. 2000), *aff'd*, 240 F.3d 1075 (5th Cir. 2000).

In opposition to summary judgment, Plaintiff appears to base her Title VII retaliation claim on the allegation that she opposed Defendant White sending the Employee-Patient, an African-American female, a termination notice.  (Pl.'s Mem. of Auths. [52] at pp. 35, 36.)  As correctly noted by RRMC, this allegation is not properly before the Court.  Ordinarily, a claimant may not assert a Title VII claim in a lawsuit "that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not 'reasonably be expected to grow out of the charge of discrimination.'"  *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)).  The Court finds that Plaintiff's EEOC charge, (*see* Doc. No. [44-1 at ECF pp. 58-61]), fails to assert explicitly or to suggest implicitly any claim of retaliatory discharge under Title VII based on Plaintiff's alleged opposition to the termination of the Employee-Patient on account of her race.

Notwithstanding the aforementioned procedural bar, Plaintiff has failed  to present any evidence preserving her Title VII retaliation claim for trial.  No showing has

been made that the Plaintiff mentioned or referenced her race or the race of the Employee-Patient in any complaint to RRMC prior to her termination. *Cf. Wright*, 2013 WL 1703738, at *8 (granting summary judgment because the plaintiff failed to present evidence that his complaints referenced discrimination based on age or race); *Johnson v. Parkwood Behavioral Health Sys.*, No. 2:11CV212, 2013 WL 1827585, at *5 (N.D. Miss. Apr. 30, 2013) (same where the plaintiff's complaints did not concern any practice prohibited by Title VII).  As a result, Plaintiff's retaliation claims under Title VII and the ADEA[13] will be dismissed.

### c.      Retaliation (FMLA)

This claim is based on the allegation that Plaintiff was discharged in retaliation for voicing "concern and 'opposition' to the sending of a letter of termination to her friend and co-worker [the Employee-Patient] that was on medical leave and was very sick." (Pl.'s Mem. of Auths. [52] at p. 43.)  Similar to Title VII and the ADEA, the FMLA prohibits employers from discriminating against employees for opposing practices made unlawful by the act.  *See* 29 U.S.C. § 2615(a)(2).  Furthermore, a prima facie case of retaliatory discharge under the FMLA requires that Plaintiff "show that (1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge."  *Richardson v. Monitronics Int'l, Inc.*,

---

[13] Plaintiff's opposition to RRMC's request for summary judgment does not assert any argument or identify any evidence supporting her ADEA retaliation claim. Therefore, the Court considers this claim abandoned.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that plaintiff's failure to pursue a claim beyond her complaint resulted in abandonment); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.") (citation omitted).

434 F.3d 327, 332 (5th Cir. 2005) (citing *Hunt v. Rapides Healthcare Sys., Inc.*, 277

F.3d 757, 768 (5th Cir. 2001)).

The following deposition testimony concerning Plaintiff's meeting with Defendant

White and Maggie Fife on August 20, 2010, is central to Plaintiff's retaliation claim under

the FMLA:

Q.  And then I understand that on August 20th, Darlene White met with you and Mrs. Fife and informed you about changes to the laboratory?

A.  She informed me Maggie was going to be laid off on the 27th.  [The Employee-Patient] was going to be sent a letter of her termination.  And I asked was she able to do that, and she said, yes, she can.  And I got upset.  I told her I didn't want to hear any more, and I walked away.

. . . .

Q.  Tell me what else you recall about that conversation.

A.  Well, she asked my -- Maggie and myself to come sit down, and she was telling Maggie that as of the 27th of August, that she would no longer have that position.  And then she said, and . . . [the Employee-Patient] -- we would be sending her a letter home, terminating her position.  And I said, "Well, how can you do that?  She's sick."  And she said, "Yeah, we can do that."  And I said, "Well, I don't want to hear this anymore.  I have a patient to stick."
And I got up and I stuck my patient and I had no more to say to her, because I felt like if you do this to somebody that's sick, you don't care about anybody else.  And that really got to me.  I -- you know, I couldn't -- I couldn't talk to her any more about it.

(Cosby Dep. [51-3] 38:14-21, 39:23-40:12.)  The Court finds that Plaintiff's

conduct–questioning an employment action, stating that she did not want to hear

anymore upon Defendant White's response, and walking out of the meeting–was

sufficiently antagonistic to constitute opposition under § 2615.  *Cf. Crawford v. Metro.*

*Gov't of Nashville & Davidson County, Tenn.*, 555 U.S. 271, 276, 129 S. Ct. 846, 172 L.

Ed. 2d 650 (2009) ("The term 'oppose,' being left undefined . . . [under Title VII], carries

its ordinary meaning:  'to resist or antagonize . . .; to contend against; to confront; resist; withstand . . . .'") (citations omitted).[14]

However, it is unclear whether Plaintiff was actually opposing an employment practice made unlawful by the FMLA.  Plaintiff also testified that she did not mention the FMLA during her meeting with Defendant White on August 20, and that she did not know if the Employee-Patient was out on FMLA leave at that time.  (*See* Cosby Dep. [44-1] 100:3-13.)  The Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity."  *Davis*, 448 Fed. Appx. at 493.   Moreover, the termination of an individual while they are on FMLA leave does not necessarily constitute an unlawful employment practice.  *See O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir. 2000) (finding that an employee may be terminated while on FMLA leave as part of a reduction in force); *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1157 (7th Cir. 1997) (same).

In any event, the Court need not determine whether the Plaintiff's opposition constituted protected activity under the FMLA, the first element of her prima facie case, since she has failed to establish the third element, a causal link between the protected activity and the discharge.  "[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activities."  *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003)

---

[14] In *Crawford*, the Supreme Court held that the protections afforded by Title VII's opposition clause extend to an employee who speaks out about discrimination in response to questions by her employer during an internal investigation.  *Id.* at 273.

(citations omitted).  In *Manning*, the plaintiff alleged that Chevron retaliated against him because he had previously filed employment discrimination claims against the company. *Id.*  The Fifth Circuit held that the plaintiff failed to establish his prima facie case because there was no indication that any decisionmaker for the company knew about his prior lawsuits.  *Id.* at 884.

In this case, the summary judgment record evidences that Vance Reynolds, RRMC's CEO, decided to terminate the Plaintiff for violating HIPAA upon the recommendation of Joy Hite.  (*See* Hite Dep. [44-2] 172:12-173:23; RRMC 30(b)(6) Dep. [44-4] 108:3-19.)  No showing has been made that Ms. Hite or Mr. Reynolds knew anything of Plaintiff's opposition to the Employee-Patient receiving a termination notice through the mail.  Clearly, Defendant White was aware of this opposition.  However, Plaintiff's conclusory and speculative allegations "that the decision to terminate was the result of *Defendant White feeding false information to the ultimate decision-maker*" and that "White engaged in a willful and intentional course of conduct to terminate Cosby"[15] fail to evidence any genuine issue for trial.[16]  The mere fact that Defendant White, along with Joy Hite and Anita Oliphant, delivered the message of Plaintiff's termination to her on August 26, does not lead to the inescapable conclusion that Defendant White was somehow responsible for the termination decision.

---

[15] (Pl.'s Mem. of Auths. [52] at pp. 36, 44.)

[16] *See Oliver*, 276 F.3d at 744 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (providing that "mere conclusory allegations are" insufficient to avoid summary judgment).

Even assuming *arguendo* that Plaintiff could establish a prima facie case of retaliation under the FMLA, her claim cannot proceed to trial. RRMC has proffered a legitimate non-retaliatory reason for Plaintiff's termination, (*see* section II(B)(1)(a)(ii) of this opinion), and Plaintiff's speculation and conjecture fail "to show the retaliatory animus necessary to avoid summary judgment." *See McKenna v. Liberty Mut. Group, Inc.*, 468 Fed. Appx. 413, 417-18 (5th Cir. 2012) (applying the Fifth Circuit's modified *McDonnell Douglas* approach to plaintiff's FMLA retaliation cause of action).

### 2. State Law Claims[17]

#### a. Tortious Breach of Contract

It is undisputed that the Plaintiff was an at-will employee of RRMC with no express contract of employment. Mississippi adheres to the employment-at-will doctrine. *See Senseney v. Miss. Power Co.*, 914 So. 2d 1225, 1228 (¶ 8) (Miss. Ct. App. 2005) (citing *Kelly v. Miss. Valley Gas Co.*, 397 So. 2d 874, 874 (Miss. 1981)). Where there is no written employment agreement (or where an agreement does not specify the length of employment), the employment relationship is terminable at the will of either party. *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1088 (Miss. 1987).

---

[17] Although Plaintiff's federal claims are no longer viable, the Court exercises its discretion to retain supplemental jurisdictional over Plaintiff's state law claims in order to rule on summary judgment. *See* 28 U.S.C. § 1367. Plaintiff has not raised any objection to the Court ruling on her state law claims in the event of the dismissal of her federal causes of action. Further, the late stage of this proceeding warrants the retention of jurisdiction in this, the original forum chosen by the Plaintiff. *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("Our case law is clear that when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation . . . , that court has abused its discretion under 28 U.S.C. § 1367.") (citations omitted).

This "means that an employer may terminate an employee at any time for a good reason, a wrong reason, or no reason at all." *Senseney*, 914 So. 2d at 1228 (¶ 8).

Plaintiff seeks to fit her tortious breach of contract claim under the exception to the employment-at-will doctrine recognized by the Mississippi Supreme Court in *Bobbitt v. Orchard, Ltd.*, 603 So. 2d 356 (Miss. 1992).  In *Bobbitt*, the court held that when an employer furnishes its employees a detailed manual setting forth its rules of employment and the procedures to be followed in the event that an employee violates its rules, the manual creates a contractual obligation on the part of the employer to follow its provisions in disciplining an employee for rules infractions specifically covered by the manual.  603 So. 2d at 361.  Numerous authorities have recognized that *Bobbitt* has no application where an employee handbook contains a disclaimer to the effect that the policies and procedures in the handbook do not create a contract of employment, *see, e.g.*, *Kent  v. Vicksburg Healthcare, LLC*, No. 5:10CV195, 2012 WL 1556511, at *6 (S.D. Miss. Apr. 30, 2012); *Hall v. Bolivar County*, No. 2:08CV174, 2010 WL 3861078, at *2 (N.D. Miss. Sept. 24, 2010); *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 848 (¶¶ 7-12) (Miss. 2001); or, where the employee signs a separate document acknowledging the at-will nature of the employment relationship.  *See McCrary v. El Paso Energy Holdings, Inc.*, 209 F. Supp. 2d 649, 652 (N.D. Miss. 2002); *Senseney*, 914 So. 2d at 1229 (¶ 12).  Plaintiff Shirley Cosby signed a Handbook Receipt and Acknowledgment form ("Receipt form") indicating:

> I understand that my employment with the facility will be on an at-will basis, and that either I or the facility can terminate the relationship at any time, with or without notice and with or without cause.
>
> I understand that the handbook is not contractual in nature.

-30-

(Cosby Dep. [44-1] 134:17-22, and Ex. 9 to Dep. at ECF p. 62.)[18]

Plaintiff's opposition to summary judgment argues that RRMC's alleged failure to follow "policies and procedures for supervisors" and "corporate policy" regarding HIPAA somehow resulted in a breach of contract.  (Pl.'s Mem. of Auths. [52] at p. 28.)  This theory of liability is not well taken.  First, Plaintiff's acknowledgment that her "employment with the facility will be on an at-will basis"[19] renders ineffective her reliance on supervisor or corporate policies and procedures for contractual obligations.  *Cf. McCrary*, 209 F. Supp. 2d at 652; *Senseney*, 914 So. 2d at 1229 (¶ 12).  Second, regardless of any RRMC polices and procedures, Plaintiff testified at deposition that she was unaware of the existence of any contract with RRMC; that she was employed at-will and that RRMC could terminate her employment at any time for any reason; and that she did not contend RRMC breached any contract of employment.  (Cosby Dep. [44-1] 31:5-12, 32:25-33:22, 100:21-101:5.)

Plaintiff's tortious breach of contract claim will be dismissed since RRMC could terminate her employment "for a good reason, a wrong reason, or no reason at all." *Senseney*, 914 So. 2d at 1228 (¶ 8).

### b. Intentional Infliction of Emotional Distress

This claim is premised on the same allegations underlying Plaintiff's complaints of employment discrimination.  "The treatment received by Cosby was so severe and

---

[18] At some point in time, Plaintiff marked through the "with or without notice and with or without cause" language on the Receipt form and wrote "with cause" in its place. Plaintiff acknowledged at her deposition that this alteration did not change her employment relationship with RRMC.  (Cosby Dep. [44-1] 135:6-8.)

[19] (Ex. 9 to Cosby Dep. [44-1] at ECF p. 62.)

pervasive causing Cosby to be subjected to disparate discipline and disparate treatment in the workplace.  Other employees were clearly treated differently, and the treatment rendered to Cosby by Defendant River Region and White was ***intentional***, willful, discriminatory and retaliatory."  (Pl.'s Mem. of Auths. [52] at p. 32.)  Defendants assert that Plaintiff's emotional distress claim is barred by the applicable statute of limitations and fails as a matter of law.  The Court agrees.

Actions asserting intentional infliction of emotional distress are subject to the one-year statute of limitations provided under section 15-1-35 of the Mississippi Code. *Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 423 (¶ 26) (Miss. 2010).  The Court finds that the statute of limitations on the subject claim began to run on August 26, 2010, the date of Plaintiff's termination.  This action, filed more than one year later on November 1, 2011, is time-barred.

Plaintiff's reliance on the doctrine of equitable tolling does not change this result. It is not clear if the Mississippi Supreme Court would even apply this doctrine in a case involving a non-governmental employer.  "This Court and the Fifth Circuit have only employed the doctrine of equitable tolling in employment cases which involve governmental agencies."  *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 149 n.5 (Miss. 1998).[20]  Even accepting, *arguendo*, that the doctrine is applicable in a case

---

[20] "[A] federal court exercising supplemental jurisdiction over a state law claim must apply the substantive law of the state in which it sits." *Zavala v. City of Houston, Tex.*, 196 F.3d 1256, 1999 WL 800008, at *2 (5th Cir. Sept. 24, 1999) (citing *United Mine Workers v. Gibbs*, 389 U.S. 715, 726 (1966)).  The Mississippi Supreme Court's rulings on substantive state law issues are binding in this Court.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

such as this, Plaintiff has failed to show that the specific facts underlying her complaint justify equitable tolling.

"The theory of equitable tolling provides that where a plaintiff's delay in filing is caused by the defendant's misrepresentation, the statute is tolled." *Smith*, 726 So. 2d at 149 (¶ 19) (citing *Amburgey*, 936 F.2d at 810). "[E]xcusable neglect" for the late filing is insufficient. *Ott v. Johnson*, 192 F.3d 510, 513-14 (5th Cir. 1999) (citation omitted). Equitable tolling is to be applied only in "rare and exceptional circumstances", such as when "the plaintiff is actively misled by the defendant about the cause of action . . . ." *Id.* at 513. Plaintiff Cosby appears to contend that she was misled by RRMC in that she did not find out until discovery was conducted in this case that Defendant White and Joy Hite purportedly provided false testimony before the MESC. Plaintiff had sufficient information to file her complaint in this action including a claim for intentional infliction of emotional distress prior to conducting any discovery but after the MESC hearings. Thus, Plaintiff's late filing cannot be blamed on any purported misrepresentations attributable to the Defendants during the MESC proceeding.

Notwithstanding the statute of limitations, Defendants' conduct evidenced by the summary judgment record fails to support the maintenance of Plaintiff's emotional distress claim. An action for intentional infliction of emotional distress requires the defendant's "conduct to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (¶ 23) (Miss. Ct. App. 2004) (citation omitted). Liability will not attach for mere insults, threats, indignities, petty oppression, annoyances, or other trivialities. *Id.* Furthermore,

employment disputes will not ordinarily support an emotional distress claim. *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 851 (¶ 24) (Miss. 2001) (citations omitted). "Only in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress." *Brown v. Inter-City Fed. Bank for Savings*, 738 So. 2d 262, 265 (¶ 9) (Miss. Ct. App. 1999) (citing *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994)). This is not such an unusual case and no reasonable jury could find that Defendants' conduct relating to Plaintiff's termination of employment was so outrageous and extreme in character as to be intolerable in a civilized society. Therefore, Defendants are entitled to summary judgment as a matter of law on Plaintiff's complaint of intentional infliction of emotional distress.

### c.   Negligence

Plaintiff asserts claims of negligent hiring, negligent supervision, negligent retention and negligent infliction of emotional distress against RRMC and Defendant White. Defendants posit that all of these claims are based on events that occurred in connection with Plaintiff's employment, and thus, the claims are barred by the exclusivity provision of the Mississippi Workers' Compensation Act (the "Act"). *See* Miss. Code Ann. § 71-3-9. The Mississippi Supreme Court has long held that the Act's exclusivity provision covers claims made by an injured employee against his employer or any co-employee causing injury. *See, e.g.*, *Christian v. McDonald*, 907 So. 2d 286, 290 (¶ 20) (Miss. 2005); *Sawyer v. Head*, 510 So. 2d 472, 476-77 (Miss. 1987); *Brown v. Estess*, 374 So. 2d 241, 242 (Miss. 1979). Moreover, negligence allegations like

those raised by the Plaintiff in this lawsuit have consistently been found to fall within the scope of the Act.  *See, e.g.*, *Ford v. Madison HMA, Inc.*, 867 F. Supp. 2d 843, 849 (S.D. Miss. 2012) (finding claims of negligent infliction of emotional distress and negligent supervision, retention and hiring to be barred under the Act); *Bailey v. Cooper Lighting, Inc.*, No. 5:07cv196, 2008 WL 1868568, at *5 (S.D. Miss. Apr. 24, 2008) (same); *McNatt v. NPC Int'l, Inc.*, No. 1:10CV330, 2012 WL 884887, at *3 (N.D. Miss. Mar. 14, 2012) (same as to negligent hiring, negligent supervision and negligent retention claims). Plaintiff fails to present any contrary precedent or persuasive argument as to why the Act's exclusivity provision does not govern here.  Therefore, her negligence claims will be dismissed.

## III.  CONCLUSION

Based on the foregoing, summary judgment in favor of the Defendants is appropriate in this case.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment [44] is granted and Plaintiff's Complaint is dismissed with prejudice. Any other pending motion is denied as moot.  A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 16th day of May, 2013.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE